UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WILLIAM MILLER, | Case No. 1:12-cv-917 |
| Plaintiff, | Spiegel, J.<br>Bowman, M.J. |
| v. | |
| CAROLYN COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff William Miller filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income ("SSI") in May 2009 alleging a disability onset date of September 2, 2008 due to physical impairments. (Tr. 132, 139, 159). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). An evidentiary hearing, at which Plaintiff was represented by counsel, was held on May 31, 2011. (Tr. 31-66). Melissa Edinberg, a vocational expert, also appeared and testified at the administrative hearing.

1

(Tr. 60-64). On July, 19, 2011, ALJ George Gaffaney denied Plaintiff's applications in a written decision. (Tr. 16-27). Plaintiff now seeks judicial review of that decision.

At the time of the hearing, Plaintiff was 29 years old with a GED. He has past relevant work as a painter, last working in 2008. Plaintiff alleges disability primarily due to post-traumatic osteoarthritis of both knees and by recurrent dislocation of his left shoulder. Plaintiff also has a history of left shoulder dislocation and had surgery to repair his shoulder. (Tr. 264, 388). Plaintiff asserts that he suffers from debilitating knee pain, and at times his knees are so painful that he cannot walk. (Tr. 264).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "status post left shoulder surgery, status post right knee ACL repair, and status post right tibia fracture surgery." (Tr. 23). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of sedentary work[1]. (Tr. 23). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform his past relevant work, he can nonetheless perform jobs that exist in significant numbers in the national economy. (Tr. 25). Accordingly, the ALJ determined that Plaintiff is not

---

[1] **Error! Main Document Only.** Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§404.1567(a) (*re*: DIB), 416.967(a) (*re*: SSI) "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

2

under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) improperly determining Plaintiff's residual functional capacity; and 2) improperly evaluating Plaintiff's credibility. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

**II. Analysis**

    **A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence

supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she

4

suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

1. *Relevant Medical Evidence and Decision of the ALJ*

In 1996, Plaintiff fractured his left leg in a dirt bike accident and underwent surgery to repair the fracture with a bone graft, plates, and pins. (Tr. 264). In 1999, Plaintiff tore his right knee cartilage and ligaments in a automobile accident, and underwent reconstructive surgery. (Tr. 264).

In December 2007, Plaintiff saw Dr. Hoke, his family physician, who reported Plaintiff's prior knee surgeries, and noted that Plaintiff previously dislocated his left shoulder, for which he underwent a surgical repair. (Tr. 264, 300). An exam revealed Plaintiff had pain in the left knee and bilateral pes planus (flat feet), but was otherwise normal. (Tr. 265, 301). Dr. Hoke stated that correction of the flat feet would help Plaintiff's knee pain, but Plaintiff had no insurance, so physical therapy and custom orthotics were not feasible options. (Tr. 265, 301). Dr. Hoke prescribed pain medication and advised Plaintiff to get Spenco rigid shoe inserts and follow-up with an orthopedist after he obtained insurance. (Tr. 265, 301).

In January 2008, Plaintiff saw Dr. Hoke for a follow-up visit. (Tr. 266, 302). Plaintiff stated his knees had not worsened, but he had constant knee pain. (Tr. 266, 302). An exam revealed no abnormalities. (Tr. 267, 302). Dr. Hoke prescribed a different pain medication and gave Plaintiff information on Spenco rigid inserts. (Tr. 267, 303). The doctor also stated that he would refer Plaintiff to a surgeon after Plaintiff

5

obtained insurance coverage, which Plaintiff anticipated he would receive in the next few months. (Tr. 267, 303).

In October 2008, Plaintiff had a sudden onset of right knee swelling. (Tr. 268). He went to the ER, where right and left knee x-rays revealed swelling, effusion, post-surgical changes, degenerative changes and multiple densities that likely represented loose bodies, bilaterally. (Tr. 214-17, 235-36, 241-42, 276-79). The next day, he told Dr. Hoke that there was no precipitating injury or event, but his right knee swelling was aggravated by weight-bearing. (Tr. 268, 304). An exam revealed pain, edema, and a limited range of motion in the right knee, but was otherwise normal. (Tr. 269, 305).

In November 2008, a magnetic resonance imaging (MRI) of the right knee revealed prior surgical repair of the anterior cruciate ligament (ACL) with impingement of the distal femur on the graft where it exited the tibial tunnel, and a partially torn graft. (Tr. 206, 238, 284). It also revealed extensive medial meniscus tears with medial compartment chondromalacia, joint effusion with loose joint bodies, and focal chondromalacia in the lateral compartment. (Tr. 207, 285). An MRI of the left knee revealed a prior surgical repair of the ACL and a tibial plateau fracture with metallic hardware, a suspected lateral collateral ligament complex injury, and a suspected popliteus tendon tear. (Tr. 208-08, 232-34, 239, 283).

In March 2009, Plaintiff saw Dr. Hoke again. (Tr. 272, 307). Dr. Hoke noted that Plaintiff had knee pain and "need[ed] surgery once he g[ot] coverage." (Tr. 271, 307). Dr. Hoke also noted Plaintiff was "trying to apply for disability due to his chronic knee pain which limits his ability to work." (Tr. 271, 307). A physical exam revealed no abnormalities. (Tr. 272, 307). Dr. Hoke stated that Plaintiff's blood pressure was "well-

6

controlled" with medication, and then refilled that medication. (Tr. 272, 308). Nonetheless, Dr. Hoke stated Plaintiff was "[u]nable to work due to chronic knee pain (see MRI reports). I agree with his plan for temporary disability benefits so he can get surgery and then hopefully return to workforce." (Tr. 272, 308). Dr. Hoke prescribed pain medication and instructed Plaintiff to follow-up as needed. (Tr. 272, 308).

On July 29, 2009, Plaintiff went to the ER due to pain behind his knee after his knee gave out and caused him to fall and twist his knee. (Tr. 361). He did not have any swelling and was able to walk after the incident. *Id.* An exam revealed tenderness, but was otherwise normal, with no swelling, redness, effusion, laxity, atrophy, or muscle wasting. (Tr. 362). X-rays revealed prior surgical repair of the ACL, small joint effusion, and some calcified fragments. (Tr. 365). The diagnosis was knee sprain and Plaintiff was given pain medication. (Tr. 362-64).

The next day, Plaintiff saw Gary Ray, M.D., for a consultative examination. (Tr. 248-58). A knee exam revealed tenderness, "minimal" swelling, "minimal" crepitus, and nearly normal ranges of motion, along with decreased shin sensation and absent ankle reflexes. (Tr. 253, 255-56). A left upper extremity exam revealed tenderness and limited motion in the left shoulder, and absent left biceps and triceps reflexes, but no difficulty with grip or fine manipulation. (Tr. 251, 255-56). Left shoulder x-rays showed post-surgical changes, but no acute trauma or soft tissue abnormality. (Tr. 248, 257-58, 322-23). Dr. Ray concluded that Plaintiff's exam was consistent with left shoulder and bilateral knee injuries, and revealed "mild" weakness and motion deficits. (Tr. 256). He opined that Plaintiff could lift and carry twenty pounds, stand for one hour at a time, walk for thirty minutes at a time, and sit without restriction. (Tr. 256). Dr. Ray further opined

7

that Plaintiff should avoid squatting, kneeling, crawling, and climbing, and should not reach overhead with the left arm, but could handle objects without difficulty.  (Tr. 256).

In August 2009, Plaintiff saw Dr. Hoke due to hypertension. (Tr. 309).  An exam was unremarkable, and Dr. Hoke concluded that Plaintiff's blood pressure was well-controlled with medication. (Tr. 310). The doctor further noted that the MRIs showed significant internal derangement of both knees, and stated that he would "write a note to have him off work due to injury." (Tr. 310). That same day, Dr. Hoke wrote a note on a prescription pad stating Plaintiff was "[u]nable to work secondary to [bilateral] chronic knee pain (see MIR report)." (Tr. 321).

In September 2009, Jerry McCloud, M.D., reviewed the record and opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, sit for six hours in an eight-hour workday, and stand/walk for two hours in an eight-hour workday. (Tr. 289).  In addition, Plaintiff could only occasionally stoop and climb ladders, ropes and scaffolds.  (Tr. 290).

On February 10, 2010, Plaintiff went to the ER due to right knee pain that started the previous evening after he was "moving some heavy furniture," "lifting furniture," and doing "alot of bending then standing to move the furniture." (Tr. 353). Plaintiff wanted to make sure that hardware from his previous surgery was still in good position. (Tr. 353). An exam revealed mild to moderate swelling and tenderness in both knees, but normal muscle strength, muscle tone, and symmetric reflexes. (Tr. 354). Right knee x-rays showed degenerative and post-operative changes, but the hardware was in place, there was no acute injury, and a comparison with prior right knee x-rays showed no change. (Tr. 354-55, 358). Left knee x-rays showed the surgical hardware was in place, and

8

posttraumatic healing changes. (Tr. 355, 359). The diagnosis was knee sprain, and Plaintiff was given ibuprofen. (Tr. 354).

On February 13, 2010, Plaintiff went to the McCullough-Hyde ER due to right knee pain after he slipped and fell on the ice while loading boxes two days earlier. (Tr. 373). An exam revealed pain and swelling of the right knee. (Tr. 373). X-rays revealed degenerative and postsurgical changes consisting of the previous ACL surgical repair with mild narrowing in the medial femoral tibial joint space, spurring, and multiple calcifications that likely represented loose bodies. (Tr. 379-80). The diagnosis was right knee strain and he was given a Medrol Dosepak. (Tr. 374).

In April 2010, Plaintiff saw Dr. Hoke "to discuss disability." (Tr. 388). An exam revealed no abnormalities, but Dr. Hoke stated Plaintiff was unable to work "due to his knee injuries and resultant pain. Unfortunately, due to lack of insurance, he has not been able to get the necessary surgeries. I will submit letter for disability determination in that regard." (Tr. 389).

In August 2010, Dr. Hoke opined that Plaintiff could sit for two hours at a time, but less than four hours in an eight-hour day. (Tr. 339). In addition, he could stand for twenty minutes at a time, walk less than 100 feet at a time, and stand/walk for less than two hours in an eight-hour day. (Tr. 339). Plaintiff did not need to walk during an eight-hour workday, but needed to shift positions between sitting, standing, and walking "at will." (Tr. 339). He could rarely lift ten pounds. (Tr. 339-40). Moreover, Plaintiff could "never" stoop/bend, crouch/squat, climb ladders or climb stairs. (Tr. 340). He had no problems with fine manipulation, but could grasp, and twist objects with his left hand

9

only fifty percent of the day, and could never reach overhead with his left arm.  (Tr. 341).

In May 2011, an MRI of the left knee was "grossly stable" and revealed the prior surgical fixation with metallic hardware, and no evidence of internal derangement.  (Tr. 394).  An MRI of the right knee revealed the prior ACL surgical repair, advanced chondromalacia, and a small ossification that could represent a joint body.  (Tr. 396-97). On May 13, 2011, Dr. Hoke wrote a letter stating that Plaintiff stopped working in the fall of 2008 because he could not stand for an extended period of time. (Tr. 393).  Dr. Hoke stated that Plaintiff needed to have surgery on his knees, but lacked insurance.  (Tr. 393). The doctor stated he supported Plaintiff's "request for disability." (Tr. 393).

*2.  ALJ's RFC Determination*

Plaintiff's first assignment of error asserts that the ALJ's RFC determination is not substantially supported.  Specifically, Plaintiff maintains that in formulating his RFC, the ALJ failed to give controlling weight to the opinion of Dr. Hoke, his treating physician. Plaintiff's contentions are unavailing.

The regulations provide that the final responsibility for determining a Plaintiff's RFC is reserved to the Commissioner and that "the RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical evidence and other evidence." 20 C.F.R. § 404.1527.

Furthermore, in evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and

extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Social Security Ruling 96-2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544

Here, the ALJ determined that Plaintiff retained the residual functional capacity to perform the full range of sedentary work. In making this finding, the ALJ noted that the objective evidence of Plaintiff's knee abnormality partially explains his symptoms; however the record does not establish a basis to conclude that Plaintiff is unable to perform sedentary work. In support of this conclusion, the ALJ noted that the opinion

11

evidence, including the findings of Dr. Ray, indicate a higher level of functioning than Plaintiff alleges. (Tr. 24). The ALJ gave "significant weight" to Dr. Ray's opinion "because it was based on a review of the longitudinal record, interview of the claimant, examination of the claimant and reflection upon objective studies." (Tr. 24). The ALJ also gave some weight to the findings of Dr. McCloud, who determined that Plaintiff was capable of performing light work. With respect to the opinion of Plaintiff's treating physician, Dr. Hoke, the ALJ found that his limitations were essentially consistent with sedentary work, except for Dr. Hoke's finding that Plaintiff could only sit for four hours in an eight-hour workday. (Tr. 25). The ALJ noted that there was "no objective basis for this limitation" and that it was inconsistent with the medical records. Accordingly, the ALJ gave no weight to Dr. Hoke's sitting restriction in formulating Plaintiff's RFC.

In finding that Plaintiff could perform the full range of sedentary work, the ALJ also relied on Plaintiff's reported activities, such as loading heavy boxes, which were inconsistent with a finding that Plaintiff is unable to perform substantial gainful activity.

Plaintiff argues that the entirety of Dr. Hoke's opinion was entitled to substantial, if not controlling, weight. Specifically, Plaintiff contends that in evaluating Dr. Hoke's opinions, "[t]he ALJ misunderstands Dr. Hoke's point." (Doc. 8 at 8). Plaintiff notes that, "[a]s Dr. Hoke has stated in numerous portions of the record, Plaintiff experiences significant pain in both knees with minimal walking (fewer than 100 feet) accompanied by swelling and instability. (Tr. 336-41, 393). *It is for this reason* that Dr. Hoke opined that Plaintiff cannot work full-time." (Doc. 8 at 8-9 (emphasis added)). Plaintiff further contends that the ALJ failed to consider that Plaintiff treated with Dr. Hoke for a number of years and that his findings were supported by his treatment records.

12

Plaintiff's assertions, however, fail to establish that the ALJ erred in rejecting Dr. Hoke's four-hour sitting limitation. As noted by the ALJ, such limitation was not supported by any objective evidence or clinical findings. Notably, Plaintiff admits that "one does not need to use one's knees when sitting," but states that "many people with knee problems find that their knees become quite stiff when they sit for extended periods" Plaintiff did testify that he had knee pain that radiated to his back when he sat but that assertion was not supported by medical evidence. (Doc. 8 at 9). As noted above [t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406. Here, Plaintiff fails to cite to any objective evidence in support of these assertions and/or any evidence to rebut the findings of the ALJ. Accordingly, the undersigned finds that the ALJ properly weighed the opinions provided by Dr. Hoke.

Plaintiff further argues that the ALJ erred in giving deference to the findings of Dr. Ray. As noted above, the ALJ determined that Dr. Ray's opinion was entitled to significant weight because it was based on a review of the longitudinal record, interview of the claimant, examination of the claimant and reflection upon objective studies. Plaintiff, however, asserts that Dr. Ray's opinion was not based on a review of the longitudinal record and that Dr. Ray only had access to x-rays of Plaintiff's left shoulder. Plaintiff's contentions lack merit.

Here, Dr. Ray's assessment clearly indicates that his evaluation was not based solely on his review of Plaintiff's shoulder x-ray. Notably, Dr. Ray indicated that he

reviewed office notes from Dr. Hoke, he evaluated the oral history given by Plaintiff and he performed an examination of Plaintiff. Furthermore, Plaintiff fails to point to any objective evidence in the record that Dr. Ray did not review, that would invalid his findings. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993) (The ultimate burden of proof rests on Plaintiff to show that he is disabled).

Last, Plaintiff maintains that the ALJ's RFC assessment is not substantially supported because he failed to impose reaching limitations due to his left shoulder injury. Plaintiff testified that he could not reach overhead or behind himself with his left arm, and Dr. Ray and Dr. Hoke opined that Plaintiff could not perform overhead reaching with the left arm. (Tr. 54, 256, 341). However, as noted by the Commissioner, sedentary work does not require overhead reaching. *See* 20 C.F.R. §§ 404.1567(a); 416.967(a). Moreover, at the administrative hearing, the ALJ's hypothetical question to the vocational expert included a limitation that Plaintiff could not reach overhead with his left arm. (Tr. 62-63). In response, the VE identified 8,000 jobs as an assembler, 3,000 jobs as a dispatcher, and 3,000 jobs as an information clerk in the State of Ohio that the individual could perform. (Tr. 63).

In light of the foregoing, the undersigned finds that the ALJ properly weighed the opinion evidence in finding that Plaintiff is capable of performing the full range of sedentary work and that such a finding is supported by substantial evidence.

### 3. Credibility Assessment

Plaintiff's next assignment of error asserts that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ's credibility assessment improperly characterized Plaintiff's testimony and relied on the

14

"sit and squirm" test to discount Plaintiff's complaints of pain. Plaintiff's assertions again lack merit.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS*, 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the

adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Here, the ALJ found that Plaintiff's testimony that he was unable to perform almost any activity was inconsistent with the record. (Tr. 24). In support of this finding,

the ALJ noted that Plaintiff fell on the ice in February 2010 while loading boxes. (Tr. 24, 373). The record also indicates that Plaintiff had right knee pain a few days before that after he was "moving some heavy furniture," "lifting furniture," and doing "a lot of bending then standing to move the furniture." (Tr. 353). The ALJ further cited to Plaintiff's vague statement relating to his limitations (i.e., he did not know how long he could sit or how much he could lift). (Tr. 24, 255). The ALJ also noted that Plaintiff is able to maintain relationships outside the home. Contrary to Plaintiff's contentions, such evidence was properly considered by the ALJ in determining that Plaintiff's testimony that he only watches television, stares at the walls and does "a whole lot of nothing" was not fully credible. (Tr. 38, 43-44).

Next, Plaintiff argues that the ALJ improperly discounted his testimony that his knees get stiff if he sits too long, that he can sit for only one hour and that he needed to alternate positions. Such a limitation, however, is not supported by the evidence of record. Notably, even if the ALJ gave controlling weight to Dr. Hoke, he found that Plaintiff could sit for two hours at a time. (Tr. 339). Finally, Plaintiff argues that an ALJ should not impose a "sit and squirm" test. Plaintiff appears to fault the ALJ because he did not note that Plaintiff "sat and squirmed" throughout the hearing. (Doc. 8 at 12). However, as noted by the Commissioner, Plaintiff cannot argue that the ALJ is not allowed to use a "sit and squirm test" and then criticize the ALJ for refusing to apply that test.

Based on the foregoing the undersigned finds that the ALJ's credibility assessment is within the "zone of choice" and should therefore be affirmed. See *Felisky*, 35 F.3d at 1035.

17

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) The decision of the Commissioner to deny Plaintiff SSI benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                              */s Stephanie K. Bowman*
                                              Stephanie K. Bowman
                                              United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| WILLIAM MILLER, | Case No. 1:12-cv-917 |
| Plaintiff, | Spiegel, J. |
| | Bowman, M.J. |
| v. | |
| CAROLYN COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).